UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IRONWORKS PATENTS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br><br>ZTE CORPORATION and<br>ZTE (USA) Inc.<br><br>      Defendants. | Case No. 3:19-cv-00513<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ironworks Patents LLC ("Ironworks" or "Plaintiff") files this Complaint for Patent Infringement under the patent laws of the United States, Title 35 of the United States Code, against Defendants ZTE Corporation and ZTE (USA) Inc. (collectively "ZTE" or "Defendant") that relates to five U.S. patents owned by Ironworks: 6,002,390; 6,850,150; 8,847,734; 9,521,269 and RE39,231 (collectively, the "Patents-in-Suit").

### PARTIES

1.      Plaintiff Ironworks is a limited liability company organized under the laws of the State of Illinois, with an office at 125 S. Clark St., 17th Floor, Chicago, Illinois 60603.

2.      Defendant ZTE Corporation is a corporation duly organized and existing under the laws of the People's Republic of China, with its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Guangdong Province, People's Republic

of China 518057. On information and belief, ZTE Corporation can be served with process at that address.

3.      Defendant ZTE (USA) Inc. is a corporation duly organized and existing under the laws of New Jersey, with its principal place of business at 2425 N. Central Expressway, Suite 600, Richardson, Texas 75080. ZTE (USA) Inc. can be served with process through its registered agent, Jing Li, 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.

4.      ZTE makes, uses, imports, sells and offers for sale wireless mobile devices, including smartphones, and related applications and services.

5.      ZTE is ranked by independent industry analysts as the fourth-largest supplier of mobile devices in the United States.

**JURISDICTION AND VENUE**

6.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., and more particularly 35 U.S.C. § 271.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      Each ZTE Defendant is subject to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, due at least to its substantial business conducted in this District, including: (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been

actively engaged in transacting business in Texas and in this District, and (iii) having committed the complained of tortious acts in Texas and in this District.

9.      ZTE, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, http://www.zteusa.com, as well as other retailers) its products and/or services in the United States, the State of Texas, and the Northern District of Texas.

10.     ZTE, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Northern District of Texas. These infringing products and/or services have been and continue to be purchased and used by consumers in the Northern District of Texas. ZTE has committed acts of patent infringement within the State of Texas and, more particularly, within the Northern District of Texas.

11.     In addition, Defendant ZTE (USA) Inc. is registered to do business in the State of Texas and headquartered in Richardson. This Court's exercise of personal jurisdiction over ZTE is consistent with the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and traditional notions of fair play and substantial justice.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and (c) and 1400(b). Defendants are subject to personal jurisdiction in this District, have transacted business in this District, and have committed acts of patent infringement in this District.

### BACKGROUND FACTS REGARDING THE IRONWORKS PATENTS

13.     Ironworks is the owner of record and assignee of each of U.S. Patent Nos. 6,002,390 ("the '390 Patent"); 6,850,150 ("the '150 Patent"); 8,847,734 ("the '734 Patent"); 9,521,269 ("the '269 Patent") and RE39,231 ("the '231 Patent") (collectively the "Patents-in-Suit").

14.     The '390 and '231 Patents were originally filed by, and assigned to, Sony Corporation ("Sony").

15.     Sony, based in Japan, is one of the world's largest consumer electronics and entertainment companies.

16.     Sony spends a significant amount of revenue on research and development.  For example, Sony Corporation spent over $4 billion on research and development in each year from 2012 -2016 (e.g. 468,183 million yen in 2016).

17.     Sony's long history of innovation has resulted in the company being awarded more than 3,200 patents.

18.     The '150 Patent was originally filed by, and assigned to, Nokia Mobile Devices Ltd. ("Nokia"). The '734 Patent is a continuation of the '150 Patent and the '269 Patent is a continuation the '734 Patent.

19.     Nokia is a Finnish multinational communications and information technology company, and at one time was the world's largest producer of mobile phones.

20.     For example, the world's first mobile phone satellite call was made on a Nokia phone.

21.     For more than 20 years, Nokia has defined many of the fundamental technologies used in virtually all mobile devices and taken a leadership role in standards setting. As a result, Nokia owns a leading share of essential patents for GSM, 3G radio and 4G LTE technologies.

These, together with other Nokia patents for Wi-Fi and video standards, form the core of Nokia's patent portfolio.

22.    Nokia spends a significant amount of revenue on research and development.  For example, Nokia spent about 4.9 billion Euros R&D investment in 2011 and 2016.   Between 1984 and 2014, Nokia has invested more than 50 billion Euros to create a portfolio of 30,000 patents and patent applications.

23.    Nokia's long history of innovation has resulted in the company being awarded more than 30,000 patents in more than 10,000 patent families.

### THE PATENTS-IN-SUIT AND CLAIMS-IN-SUIT

24.     Ironworks has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patents-in-Suit during all relevant time periods.

25.    On August 8, 2006 U.S. RE39,231 entitled "Communication terminal equipment and call incoming control method" was duly and legally issued by the USPTO.

26.    On December 14, 1999, the '390 Patent entitled "Text input device and method" was duly and legally issued by the USPTO.

27.    On February 1, 2005, the '150 Patent entitled "Portable Device" was duly and legally issued by the USPTO.

28.    On September 30, 2014, the '734 Patent entitled "Method of giving the user information, portable device, and computer program product" was duly and legally issued by the USPTO.

29.    On December 13, 2016, the '269 Patent entitled "Method of giving the user information and portable device" was duly and legally issued by the USPTO.

## ZTE'S INFRINGING PRODUCTS

30.     ZTE has been, and now is, directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused smartphones and other mobile wireless devices in this District and elsewhere in the United States that include the systems claimed in the Patents-in-Suit and/or by using the methods claimed in the Patents-in-Suit, including, for example, ZTE's use of said methods during set-up, testing, and demonstration of its smartphones and tablets.

31.     ZTE has been and now is inducing the direct infringement of method claims of the Patents-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States that were designed and intended to use and/or practice the methods and processes covered by the Patents-in-Suit.  Further, ZTE has induced infringement by, for example, providing user guides and other support materials and services to its users and by advertising features that are used, and benefits that are achieved through use of the Patents-in-Suit.

32.     Despite ZTE's awareness of the Patents-in-Suit, ZTE has continued these acts of inducement with specific intent to cause and encourage direct infringement of the Patents-in-Suit with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patents-in-Suit.

### ZTE'S KNOWLEDGE OF THE PATENTS-IN-SUIT
### AND CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE

33.     The Patents-in-Suit were previously owned by MobileMedia Ideas, LLC ("MMI").

34.     Prior to assignment the Patents-in-Suit to Ironworks, MMI attempted to resolve the issues now in this litigation over a period of six years through in-person meetings with ZTE,

numerous emails to ZTE, illustrative claim charts sent to ZTE, and multiple conference calls between MMI and ZTE.

35.     On June 16, 2010, MMI sent a letter to Mr. Yin Yimin, CEO of ZTE Corporation and Mr. Lixin Cheng, CEO of ZTE USA Inc. by Federal Express. ZTE has been aware of several of the Patents-in-Suit since no later than that date (including the '390, '150 and '231 Patents.)

36.     In addition to identifying these Patents-in-Suit, MMI's June 16, 2010 letter identified the ZTE products and methods that infringe them, including ZTE smartphones and several specific ZTE phone models available at that time.

37.     After several follow-up emails, MMI and ZTE entered into an NDA to allow the parties to discuss a possible license agreement for ZTE to the patent portfolio owned by MMI, and met in person in September 2011 and again in May 2013.

38.     During the meetings and via email, MMI provided ZTE with illustrative claim charts, including charts for the '390 and '231 Patents.

39.     MMI followed-up with ZTE multiple times through May 2016, providing updates on MMI's litigation and licensing efforts.

40.     MMI assigned the Patents-in-Suit to Ironworks in March 2017.

41.     On July 24, 2017, counsel for Ironworks sent a letter Mr. J. Ray Wood, Chief Patent Counsel of ZTE USA Inc via email. The letter provided an update on the ownership of the MMI patent portfolio and a summary of the licensing and litigation activity of the portfolio, including the Patents-in-Suit.

42.     Counsel for Ironworks also provided a list of patents that might have been of particular interest to ZTE, including the '734 and '269 Patents, and a claim chart illustrating ZTE's infringement of the '231 Patent claims.

43.     To Ironworks' knowledge, ZTE never raised any non-infringement defense related to any of the Patents-in-Suit and never raised any prior art issues related to any of the Patents-in-Suit.

44.     ZTE has not agreed to enter into a licensing agreement with MMI or Ironworks.

45.     This Complaint serves as additional notice to ZTE of the Patents-in-Suit and the manner in which they are infringed.

46.     Despite knowledge of the Patents-in-Suit and knowledge of the manner in which the Patents-in-Suit are infringed as demonstrated in the provided claim charts, ZTE has continued to infringe, and/or induce the infringement of, the Patents-in-Suit.

## COUNT I: INFRINGEMENT OF PAT. RE39,231 CLAIM 12

47.     Ironworks reasserts and realleges paragraphs 1 through 46 of this Complaint as though set forth fully here.

48.     Claim 12 of the '231 Patent provides:

| Preamble to Claim 12 | A communication terminal for informing a user of a received call from a remote caller by an alert sound, comprising: |
|---|---|
| Element A | an alert sound generator for generating the alert sound when the call is received from the remote caller; |
| Element B | control means for controlling said alert sound generator; and |
| Element C | means for specifying a predetermined operation by the user, wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the generated alert sound only for the received call, without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged, |
| Element D | further comprising: RF signal processing means for transmitting and/or receiving radio waves; and an antenna for transmitting and/or receiving said radio waves, wherein said call ringing state between said apparatus and said remote caller is established by said transmitted and/ or received radio waves. |

49.    ZTE has made, used, sold, offered for sale, and/or imported wireless mobile devices, including mobile smartphones that are communication terminals for informing a user of a received call from a remote caller by an alert sound ("Accused '231 ZTE Devices").  The Accused '231 ZTE Devices include, for example, at least Blade, Majesty, Sonata, Grand, Maven, Overture, Citrine, Max, Midnight, Axon, Zmax, Prestige, Prelude, Nubia, Warp, Open, V5, Imperial, and Fanfare series devices.

50.    ZTE has made, used, sold, offered for sale, and/or imported the Accused '231 ZTE Devices that meet each and every element of claim 12 of the '231 Patent.

51.    Accused '231 ZTE Devices are communication terminals that inform a user of a received call from a remote caller by an alert sound (e.g., an incoming call alert).

52.    Accused '231 ZTE Devices include an alert sound generator (e.g., a loudspeaker assembly) for generating the alert sound when the call is received from the remote caller.

53.    Accused '231 ZTE Devices include control means for controlling the alert sound generator (e.g., silencing a call alert).

54.    Accused '231 ZTE Devices include means for specifying a predetermined operation by the user (e.g., pressing the volume key).

55.    When the Accused '231 ZTE Devices alert sound generator is generating the ringtone and the volume button is pressed by the user, the control means controls the alert sound generator to change a volume of the generated ringtone (e.g., silence or reduce the ring volume) only for the received call.

56.    The ringtone is silenced for the incoming call without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, unchanged.

57.    Accused '231 ZTE Devices include RF signal processing means for transmitting and/or receiving radio waves and an antenna for transmitting and/or receiving said radio waves.

58.    The call ringing state between the Accused '231 ZTE Devices and the remote caller is established by the transmitted and/ or received radio waves.

59.    The technology claimed in claim 12 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

60.    ZTE had knowledge of the '231 Patent since June 16, 2010 and allegations of how the Accused '231 ZTE Devices infringe claims of the '231 Patent since at least as early as May 2013.

61.     Direct infringement of claim 12 of the '231 Patent under 35 U.S.C. § 271(a) occurred when ZTE made, imported, used, sold and/or offered for sale the Accused '231 ZTE Devices that meet claim 12 of the '231 Patent.

62.     As a direct and proximate result of ZTE's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained damages.

## COUNT II: INFRINGEMENT OF PAT. RE39,231 CLAIM 2

63.     Ironworks reasserts and realleges paragraphs 1 through 62 of this Complaint as though set forth fully here.

64.     Claim 2 of the '231 Patent provides:

| Element A | The communication terminal according to claim 12, wherein said control means controls the state of said alert sound generator to stop the sound. |
|-----------|------------------------------------------------------------------------------------------------------------------------------------------------|

65.     ZTE has made, used, sold, offered for sale, and/or imported the Accused '231 ZTE Devices that meet each and every element of claim 2 of the '231 Patent.

66.     Accused '231 ZTE Devices include control means that control the state of the alert sound generator to stop the sound (e.g., silence the alert, mute sounds).

67.     The technology claimed in claim 2 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

68.     ZTE had knowledge of the '231 Patent since June 16, 2010 and allegations of how the Accused '231 ZTE Devices infringe claims of the '231 Patent since at least as early as May 2013.

69.    Direct infringement of claim 2 of the '231 Patent under 35 U.S.C. § 271(a) occurred when ZTE made, imported, used, sold and/or offered for sale the Accused '231 ZTE Devices that meet claim 2 of the '231 Patent.

70.    As a direct and proximate result of ZTE's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained damages.

**COUNT III: INFRINGEMENT OF PAT. 6,002,390 CLAIM 18**

71.    Ironworks reasserts and realleges paragraphs 1 through 70 of this Complaint as though set forth fully here.

72.    Claim 18 of the '390 Patent provides:

| Preamble to Claim 18 | A text input method comprising: |
|---|---|
| Element A | a display step of displaying a virtual keyboard having at least a plurality of keys for character input; |
| Element B | an input step of pointing at least each key on the virtual keyboard to perform key input by the virtual keyboard; and |
| Element C | a retrieval step of retrieving a plurality of candidate words from a dictionary storing a plurality of candidate words and a plurality of exemplary phrases, using the key input performed from the virtual keyboard at the input step as a retrieval condition; |
| Element D | the retrieval condition and the candidate words being dynamically changed in accordance with a change in a key input operation state of the virtual keyboard at the input step. |

73.    ZTE has made, used, sold, offered for sale, and/or imported mobile devices, including mobile smartphones that perform a text input method ("Accused '390 ZTE Devices"). The Accused '390 ZTE Devices include, for example, at least Blade, Majesty, Sonata, Grand,

Maven, Overture, Citrine, Max, Avid, Tempo, Midnight, Axon, ZFive, Zmax, Prestige, Prelude, Nubia, Warp, Obsidian, Open, V5, Imperial, and Fanfare series devices.

74.    ZTE has made, used, sold, offered for sale, and/or imported the Accused '390 ZTE Devices that meet each and every element of claim 18 of the '390 Patent.

75.    Accused '390 ZTE Devices enable performance of a text input method.

76.    Accused '390 ZTE Devices display a virtual keyboard having at least a plurality of keys for character input.

77.    Accused '390 ZTE Devices users point to at least each key on the virtual keyboard to perform key input by the virtual keyboard.

78.    Accused '390 ZTE Devices retrieve a plurality of candidate words from a dictionary storing a plurality of candidate words and a plurality of exemplary phrases, using the key input performed from the virtual keyboard at the input step as a retrieval condition.

79.    The retrieval condition and the candidate words are dynamically changed in accordance with a change in a key input operation state of the virtual keyboard at the input step.

80.    The technology claimed in claim 18 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

81.    ZTE had knowledge of the '390 Patent since June 16, 2010 and allegations of how the Accused '390 ZTE Devices infringe claims of the '390 Patent since at least as early as May 2013.

82.    ZTE directly infringed at least claim 18 of the '390 patent by using the Accused '390 ZTE Devices directly, including in relation to product testing.

83.     In the alternative, ZTE induced infringement of at least claim 18 of the '390 patent by end users including by distributing the Accused '390 ZTE Devices that practice the claimed process in ordinary use.

84.     ZTE has made, used, sold, offered for sale, and/or imported the Accused '390 ZTE Devices knowing that ZTE's customers and/or end users directly infringed each and every claim limitation of at least claim 18 of the '390 patent.  ZTE actively induced customers and end-users to directly infringe each and every claim limitation of at least claim 18 of the '390 patent under 35 U.S.C. § 271(b).

85.     ZTE has been knowingly inducing its customers and/or end users to directly infringe at least claim 18 of the '390 patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused '390 ZTE Devices by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 18 of the '390 patent by using the Accused '390 ZTE Devices' features.

## COUNT IV: INFRINGEMENT OF PAT. 6,850,150 CLAIM 1

86.     Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 85 of this Complaint as though set forth in full herein.

87.     Claim 1 of the '150 Patent provides:

| Preamble to Claim 1 | A portable device, comprising: |
|---|---|
| Element A | control means for monitoring and controlling the operation of the device; |
| Element B | and a user interface which comprises alarm means for performing a silent alarm producing a silent, invisible, tactile sensation in the user; |

| Element C | wherein the control means are arranged to give the user abstract information on multiple internal operational events of the device by using various alarm patterns of silent, invisible sensations produced by the alarm means and sensed by the user, |
|-----------|------------------------------------------------------------------------------|
| Element D | the alarm patterns differing from one another such that at least one alarm pattern characteristic sensed by the user varies, said abstract information comprising a notification of a selected item on a menu of the user interface. |

88.     ZTE makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that are mobile stations ("Accused '150 ZTE Devices"). Accused '150 ZTE Devices include, for example, at least Blade, Majesty, Sonata, Grand, Maven, Overture, Citrine, Max, Avid, Tempo, Midnight, Axon, ZFive, Zmax, Prestige, Prelude, Nubia, Warp, Open, V5, Imperial, and Fanfare series devices.

89.     Accused '150 ZTE Devices are portable devices as described in this claim.

90.     Accused '150 ZTE Devices include a control means (e.g., a microprocessor with operating system software) for monitoring and controlling the operation of the device.

91.     Accused '150 ZTE Devices include a user interface, which includes alarm means (e.g., a vibration motor) for performing a silent alarm producing a silent, invisible, tactile sensation (e.g., vibration) in the user.

92.     Accused '150 ZTE Devices' microprocessor and operating system are arranged to give the user abstract information on multiple internal operational events of the device by using various vibration patterns produced by the vibration motor and sensed by the user.

93.     Accused '150 ZTE Devices' vibration patterns differ from one another so that the vibration characteristics sensed by the user varies.

94.     The various vibration patterns give ZTE device users abstract information on internal operational events of the device, including a notification of a selected item on a menu of the user interface.

95.     The technology claimed in claim 1 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

96.     ZTE had knowledge of the '150 Patent since June 16, 2010.

97.     ZTE directly infringes at least claim 1 of the '150 Patent by manufacturing and selling Accused '150 ZTE Devices.

98.     ZTE makes, uses, and/or imports the Accused '150 ZTE Devices knowing that ZTE has infringed and continues to infringe at least claim 1 of the '150 Patent under 35 U.S.C. § 271(a) directly.

99.     As a direct and proximate result of ZTE's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

### COUNT V: INFRINGEMENT OF PAT. 8,847,734 CLAIM 1

100.    Ironworks Patents incorporates by reference the allegations set forth in paragraphs 1 to 99 of this Complaint as though set forth in full herein.

101.    Claim 1 of the '734 Patent provides:

| Preamble to Claim 1 | A mobile station comprising: |
|---|---|
| Element A | a user interface configured to enable a user to control operation of the mobile station by manual input and to obtain information on the operation of the mobile station, |
| Element B | a tactile alert device configured to generate a tactile vibration, and |

| | |
|---|---|
| Element C | a control circuit configured to control the tactile alert device to generate a first tactile vibration with a first pattern in response to a first event and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event different from the first event, |
| Element D | wherein one of the events is user entry of an incorrect personal identification number code. |

102.    ZTE makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that are mobile stations ("Accused '734 ZTE Devices").  Accused '734 ZTE Devices include, for example, at least Blade, Majesty, Sonata, Grand, Maven, Overture, Citrine, Max, Avid, Tempo, Midnight, Axon, ZFive, Zmax, Prestige, Prelude, Nubia, Warp, Open, V5, Imperial, and Fanfare series devices that vibrate when an incorrect PIN or passcode is entered.

103.    Accused '734 ZTE Devices are mobile stations as described in this claim.

104.    Accused '734 ZTE Devices include a user interface that is configured to enable a user to control operation of the mobile station by manual input (e.g., touching the touchscreen) and to obtain information on the operation of the mobile station (e.g., when a phone call is incoming).

105.    Accused '734 ZTE Devices include a tactile alert device (e.g., a vibration motor) configured to generate a tactile vibration.

106.    Accused '734 ZTE Devices include a control circuit configured to control the tactile alert device.  The tactile alert device can generate a first tactile vibration with a first pattern in response to a first event (e.g., an incoming call) and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event (e.g., entry of an incorrect PIN).

107.    Accused '734 ZTE Devices vibrate in a distinct pattern when an incorrect personal identification number code (e.g., passcode) has been entered.

108.    The technology claimed in claim 1 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

109.    ZTE had knowledge of the '734 Patent since July 24, 2017.

110.    ZTE directly infringes at least claim 1 of the '734 Patent by manufacturing and selling Accused '734 ZTE Devices.

111.    ZTE makes, uses, and/or imports the Accused '734 ZTE Devices knowing that ZTE has infringed and continues to infringe at least claim 1 of the '734 Patent under 35 U.S.C. § 271(a) directly.

112.    As a direct and proximate result of ZTE's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

### COUNT VI: INFRINGEMENT OF PAT. 9,521,269 CLAIM 1

113.    Ironworks reasserts and realleges paragraphs 1 through 112 of this Complaint as though set forth fully here.

114.    Claim 1 of the '269 Patent provides:

| Preamble to Claim 1 | A mobile station comprising: |
|---|---|
| Element A | a user interface configured to enable a user to control operation of the mobile station by manual input and to obtain information on the operation of the mobile station, |
| Element B | a tactile alert device configured to generate a tactile vibration, and |
| Element C | a control circuit configured to control the tactile alert device to generate a first tactile vibration with a first pattern in response to a first event and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event different from the first event, |
| Element D | wherein the first event is correct user manual input. |

115.    ZTE makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that are mobile stations ("Accused '269 ZTE Devices").  The Accused '269 ZTE Devices include, for example, at least Blade, Max, Axon, Zmax, and Nubia series devices.

116.    ZTE has and continues to make, use, sell, import, and/or offer for sale the Accused '269 ZTE Devices that meet each and every element of claim 1 of the '269 Patent.

117.    Accused '269 ZTE Devices are mobile stations.

118.    Accused '269 ZTE Devices include a user interface configured to enable a user to control operation of the mobile station by manual input and to obtain information on the operation of the mobile station.

119.    Accused '269 ZTE Devices include a tactile alert device (e.g., a vibration motor) configured to generate a tactile vibration.

120.    Accused '269 ZTE Devices include a control circuit configured to control the tactile alert device to generate a first tactile vibration with a first pattern in response to a first event (e.g.,

a successful fingerprint scan) and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event (e.g., an incoming phone call) different from the first event.

121.    The first event is correct user manual input (e.g., a successful fingerprint scan).

122.    The technology claimed in claim 1 was not well understood, routine, or conventional at the time that the application was filed and provided a technological solution to a technological problem rooted in computer technology.

123.    ZTE had knowledge of the '269 Patent since July 24, 2017.

124.    ZTE directly infringes at least claim 1 of the '269 Patent by manufacturing and selling Accused '269 ZTE Devices.

125.    ZTE makes, uses, and/or imports the Accused '269 ZTE Devices knowing that ZTE has infringed and continues to infringe at least claim 1 of the '269 Patent under 35 U.S.C. § 271(a) directly.

126.    As a direct and proximate result of ZTE's acts of patent infringement, Ironworks Patents has been and continues to be injured and has sustained, and will continue to sustain, damages.

## WILLFUL INFRINGEMENT

127.    ZTE has infringed and continues to infringe the above identified claims of each of the Patents-in-Suit despite its knowledge of the '150, '390, and '231 Patents at least as early as June 16, 2010; specific knowledge of how ZTE's accused systems/methods infringe the '390 and '231 Patents since May 2013; its knowledge of the '734 and '269 Patents at least as early as July 2017; and the objectively high likelihood that its actions constitute patent infringement.

128.    ZTE's infringement of the Patents-in-Suit is willful and deliberate and its actions constitute egregious misconduct, including refusing to take a license, refusing to negotiate in good faith, and having knowledge of the Patents-in-Suit and notice of the infringement but having no reasonable factual basis for non-infringement or invalidity.   This willful misconduct by ZTE entitles Ironworks to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

Ironworks demands a trial by jury on all issues that may be so tried.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ironworks requests that this Court enter judgment in its favor and against Defendant ZTE as follows:

A.    Adjudging, finding, and declaring that ZTE has infringed the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.    Awarding the past and future damages arising out of ZTE's infringement of the Patents-in-Suit to Ironworks in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C.    Adjudging, finding, and declaring that ZTE's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D.    Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

E.    Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.    Granting Ironworks such other further relief as is just and proper, or as the Court deems appropriate.

DATED: February 28, 2019   Respectfully submitted,

/s/ *Darin Klemchuk*
Darin Klemchuk
Texas Bar No. 24002418
darin.klemchuk@klemchuk.com
Tim Craddock
Texas Bar No. 24082868
tim.craddock@klemchuk.com
KLEMCHUK LLP
8150 N. Central Expressway
10th Floor
Dallas, Texas 75206
Tel: 214-367-6000
Fax: 214-367-6001

Alison Aubry Richards (*pro hac vice forthcoming*)
IL Bar # 6285669
arichards@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

***Attorneys for Plaintiff***
***Ironworks Patents, LLC***